

# THE ATTORNEY GENERAL
## OF TEXAS

PRICE DANIEL
ATTORNEY GENERAL

AUSTIN, TEXAS

June 5, 1947

Hon. D. D. Williams
County Attorney
Throckmorton County
Throckmorton, Texas

Opinion No. V-234

Re: Additional Registration
of Motor Vehicles, Arti-
cle 6675a-2, V. C. S.,
and withholding of ad-
ditional weight receipts
by State Highway Depart-
ment.

Dear Sir:

Your request for an opinion reads in part as follows:

"1. Does an owner or operator of a com-
mercial vehicle have to pay additional weight
fees in the County of the owners residence
when he is arrested for overloading in a coun-
ty other than that of such owner's residence,
or can he proceed to the nearest county seat
and pay such additional weight fees. On two
occasions in the year 1946 during the grain
harvest season, State Highway Patrolmen ar-
rested and brought operators of commercial
vehicles into the Tax Assessor-Collector of
this county to pay additional weight fees aft-
er the operators had paid fines for overload-
ing. In both cases the operators lived or
resided in counties considerable distances
from here and the owners had registered the
vehicles in such distant counties. The Tax
Assessor-Collector refused to issue such ad-
ditional weight fee receipt or receive the
money therefor.

"2. Does the Tax Assessor-Collector of
Throckmorton County, Texas, have the author-
ity to issue additional weight fee receipts
and receive the money therefor on commercial
vehicles which were not registered originally
in this county but which are being operated
in this county during seasonal work, such as
moving the grain crops?

"3. Can the State Highway Department, Motor Vehicle Division, limit the Tax Assessor-Collector of Throckmorton County, Texas, to ten (10) additional weight receipts, which will only take care of five trucks with their trailers? There are sixty (60) trucks and truck-tractors registered in this county. Practically all of them will be required to pay additional weight fees during the coming grain harvest. The Motor Vehicle Division of the State Highway Department has sent only ten (10) additional weight fee receipts to the Tax Assessor-Collector of this county and refuses to send any more. It is definite that this county and the Assessor-Collector will need more than that number of receipts."

It is assumed for the purpose of this opinion that by the use of the word "operator" as contained in your first question that you intend to designate a person who comes within the statutory definition of "owner" as defined in Article 6675a-1, Section (L), Vernon's Civil Statutes.

Article 6675a-2, Vernon's Civil Statutes, provides in part as follows:

"Every owner of a motor vehicle, trailer or semi-trailer used or to be used upon the public highways of this State shall apply each year to the State Highway Department through the County Tax Collector of the county in which he resides for the registration of each such vehicle owned or controlled by him for the ensuing or current calendar year or unexpired portion thereof . . . " (Emphasis ours)

It has been repeatedly held by the courts of this State that Article 6675a-2, V. C. S., requires an owner of a motor vehicle to register it in the county of his residence. Miller v. Foard County, 59 S. W. (2d) 277 (Tex. Civ. App. 1933); Opp v. State, 94 S. W. (2d) 180 (Tex. Crim. App. 1936). Previous opinions of the Attorney General have been uniform in following the rule announced in these decisions. See, Opinion 0-1950, dated February 14, 1940, and Opinion 0-2050, dated March 18, 1940, enclosed herewith.

The factual basis for your first question differs from that presented in each of the above decisions in only one particular. Under the facts stated by you the vehicle owner has registered his vehicle in the county of his residence for the current registration year, but he is subsequently arrested in a county other than that of his residence for operating said vehicle over the public highways with a total gross weight in excess of that for which the vehicle was originally registered. The question thus presented is whether the vehicle owner may apply for and obtain additional registration on his vehicle in the county where arrested, and where the vehicle is actually being operated, or must he obtain such additional registration in the county of his residence.

We are unable to see any distinction between the original registration of a motor vehicle by its owner and a subsequent registration of the same vehicle for an additional amount in gross weight. Article 6675a-2, supra, expressly fixes the situs of registration as the county in which the owner resides. No exception is contained in the Act regarding subsequent and additional registrations within the current registration year whereby the gross registered carrying capacity of the vehicle is increased. Likewise, nothing is contained in the Act authorizing the owner or operator of a motor vehicle, in case of arrest for underweight registration, to proceed to the nearest county seat and there, regardless of whether it is the county of his residence, secure additional registration on said vehicle.

The reason for fixing the situs of registration as the county of the owner's residence is clearly and tersely stated in Miller v. Foard, supra, wherein the court said:

"Article 6675, R. C. S., repealed before the transaction here involved occurred, permitted the owner of a motor vehicle to pay registration fees at 'the office of the county tax collector of the county in which he resides or in which the vehicle to be registered is being operated.'

"The omission of the language 'Or in which the vehicle to be registered is being operated' from article 6675a-2 . . . together with the provision of article 6675a-10

authorizing each county to retain all registration fees collected until the amount for the current year shall have reached the sum of $50,000, said sum to be deposited to the credit of its road and bridge fund, clearly manifests the intention of the Legislature to direct and require such registration fees to be collected by the tax collector of the county in which the owner of the vehicle lives.

"If these statutes fail to accomplish such purpose, it follows that the funds of one county may be received and appropriated by another county." (Emphasis ours)

The reasoning and holding of the court in the above quoted portion of its decision applies with equal force and effect to subsequent and additional registrations to increase the amount of the authorized registered carrying capacity of a particular motor vehicle. It was heretofore held by the Attorney General in Opinion No. O-3645, dated June 14, 1941, that a commercial vehicle owned and registered by a corporation in the county of its domicile, but actually operated in another county, must be registered for an additional gross weight increase in the county of the corporation's domicile rather than in the county where the vehicle was operated. In this connection it is interesting to note that the present Legislature has refused to enact a bill which would expressly authorize the owner of a motor vehicle to apply for and receive additional weight registration increases in a county other than that of the owner's residence. See, House Journal, Fiftieth Legislature, Regular Session, April 1, 1947, pages 1233, 1234.

Based upon the above authorities, and following the rule announced in Opinion No. O-3645, you are advised that the owner and operator of a commercial vehicle must apply for and receive from the tax collector of the county in which the owner has his residence any additional registration receipt increasing the gross registered carrying capacity of said vehicle, and this is true regardless of the place where the vehicle is actually being operated.

In answer to your second question, and in connection with our discussion thereof, we assume

that the legal residence of the owner of the motor
vehicle was originally registered for the current
registration year. This is in each instance some
county in this State other than Throckmorton Coun-
ty. We also assume that the owner of such motor ve-
hicle would voluntarily pay the additional regis-
tration fees to the Tax Collector of Throckmorton
County in the event he is authorized to receive the
same, and thus the sole question presented in wheth-
er said Tax Collector has the authority to accept
such registration fees.

This question has been answered in detail
by the court in Miller v. Foard, supra. In that
case, one of the issues necessary to the decision
involved the liability of certain sureties on an
official bond for registration fees collected by
the Tax Collector of Foard County in registering
motor vehicles belonging to residents in this State
other than Foard County. In deciding this issue
the court said:

"The Texas authorities recognize the
rule which distinguishes the liability of
a surety for the acts of an officer for
which they are liable and for acts for
which they are not liable.

"'The former are termed acts done
"virtute officii," and the latter "colore
officii." The distinction is this: Acts
done "virtute officii" are when they are
within the authority of the officer, but
when doing it he exercises that authority
improperly, or abuses the confidence which
the law reposes in him; whilst acts done
"colore officii" are where they are of
such nature the office gives him no au-
thority to do them.' Gold v. Campbell,
54 Tex. Civ. App. 269, 117 S. W. 463, 468.

" . . .

"We are not unmindful of the rule
which holds sureties on official bonds
liable for illegal taxes and illegal fees
voluntarily paid, but the registration
fees in controversy were legal fees pay-
able to the proper counties for their road

and bridge funds, and their collection by Que R. Miller was a diversion thereof, <u>and his acts in so doing were not authorized or sanctioned by law. They were not illegal fees voluntarily paid, but were legal fees unlawfully collected under the color of office and not in the performance of official duty.</u> If this conclusion is correct, the appellant in this case was not responsible for the $5,221.12 registration fees collected by Que R. Miller from owners of motor vehicles residing in Texas but not living in Foard county." (Emphasis ours)

In our opinion the above decision is a full and complete answer to the question presented, and we therefore answer your second question in the negative.

Your third and last question relates to the power and authority of the State Highway Department to limit the number of additional weight registration receipts it has delivered to the Tax Collector of Throckmorton County for the current year. Nothing is contained in the facts submitted by you indicating that the State Highway Department has refused to issue, by and through the Tax Collector of Throckmorton County, an additional weight certificate and receipt to any actual motor vehicle owner who is a resident of Throckmorton County. Therefore, your third question is limited to a determination of whether the State Highway Department or the county tax collector is to have the final authority, as between the two, in determining the number of additional weight receipts to be delivered to the tax collector.

Article 6675a, Vernon's Civil Statutes, places the duty of motor vehicle registration upon the State Highway Department. When the county tax collector acts, either in the original registration of a vehicle, or in the issuance of additional registration receipts increasing the authorized gross registration weight of the vehicle, he acts only as the agent of the State Highway Department.

Article 6675a-2, supra, expressly provides, in part, as follows:

". . . <u>shall apply each year to the State Highway Department</u> through the county

tax collector. . . ." (Emphasis ours)

Article 6675a-12, V. C. S., provides, in part, as follows:

"The Department shall issue, or cause to be issued, to the owner of each vehicle registered under the provisions of this act a license receipt which shall indicate . . ." (Emphasis ours)

The Act also provides for the application to be made to the county tax collector who is the only one authorized to receive the license fees provided in the Act. (Emphasis ours)

It will be observed from the above quoted provisions of Article 6675a, supra, that the application for registration is made to the State Highway Department, which is to issue a license receipt and license plates. This is also true of applications for additional registration weight receipts. The Act places the duty on the State Highway Department to receive the applications and issue the license receipts. It is evident throughout the Act that the tax collector is merely acting as agent for the State Highway Department in receiving such applications and issuing license receipts. It is likewise evident from a reading of the entire Act that the duty of enforcing the provisions of the Act is imposed upon the State Highway Department.

Nowhere in the Act is it provided whose word is to be final in case of dispute between the tax collector and the State Highway Department as to the number of additional registration weight receipts to be delivered to a particular county and the number that may be needed. It is true that the Act taken as a whole probably contemplates that the tax collector is to issue additional registration weight receipts upon applications received by him, but at the same time it is also contemplated that the tax collector will not issue such receipts to a motor vehicle owner who is not a resident of the county, or who does not otherwise come within the requirements of the law.

We are unable to find any authority which authorizes the State Highway Department to refuse to furnish additional weight receipts, or other forms, to any county based on a supposition that the tax collector of the county will violate the provisions of the

motor vehicle registration laws.  On the other hand, the State Highway Department, being charged with the duty of proper enforcement of our registration laws, certainly has the right and duty to supervise the work of its agents in such a manner as to prevent any violations of the law by its agents.  We know that the Highway Department does, as a matter of practice, from time to time check the registrations of different counties and such checks in many instances disclose violations of the law.

Inasmuch as the Act places the duty of the enforcement of the Act on the State Highway Department rather than on the tax collector, acting in the capacity of an agent for the Department, it is our opinion that any dispute as between the tax collector and the Department, as to the number of additional registration weight receipts a particular county is to receive, should be decided by the Department.  It was previously decided in Opinion No. 2050, dated March 18, 1940, that in any dispute as to the particular classification of a vehicle as between the tax collector and the State Highway Department, the final authority would rest with the Department.  The reasons stated in that opinion apply with equal force to our holding on the instant questions.  The authority of the State Highway Department in connection with this question is as between the State Highway Department and the county tax collector, and nothing herein shall be construed as prohibiting an appeal to the courts of this State by a motor vehicle owner from a decision of the State Highway Department refusing an additional weight receipt.

## SUMMARY

1.  The owner and operator of a commercial motor vehicle must register said vehicle for additional weight increases in gross carrying capacity in the county of the owner's residence rather than in the county where the vehicle is in actual operation.  (Following Article 6675a-2, V. C. S.)

2.  The county tax collector of Throckmorton County is not authorized to receive registration fees and issue additional weight registration receipts therefor on commercial vehicles owned by the resident of another

county, and originally registered in the
county of the owner's residence.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By *Charles D. Mathews*

Charles D. Mathews
Assistant

CDM:t

Enclosures

APPROVED:

*Price Daniel*

ATTORNEY GENERAL